E-FILED
Thursday, 30 March, 2023  11:46:04 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| CARTAVIUS FARRINGTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case No. 2:19-cv-02314-SLD |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

ORDER

Before the Court are Petitioner Cartavius Farrington's amended *pro se* motion under 28 U.S.C. § 2255 ("Pro Se 2255 Motion"), ECF No. 9, *pro se* motion to supplement, ECF No. 11, counseled § 2255 motion ("Counseled 2255 Motion), ECF No. 22, *pro se* motions to put the Court on notice of adjudicative facts, ECF Nos. 24, 25, and 27, and counseled motion for a status conference, ECF No. 28. For the reasons that follow, the Pro Se 2255 Motion, motion to supplement, and motion for a status conference are MOOT, the motions to put the Court on notice are DENIED, and the Counseled 2255 Motion is DENIED IN PART.

**BACKGROUND[1]**

**A. District Court**

On April 5, 2017, a grand jury returned an indictment against Farrington charging him with possession of 28 grams or more of a mixture or substance containing crack cocaine with intent to distribute. Indictment 1, Cr. ECF No. 1. Assistant Federal Public Defender Elisabeth Pollock was appointed to represent Farrington. Cr. Apr. 13, 2017 Min. Entry. On August 9, 2017, the United States ("the Government") filed an information pursuant to 21 U.S.C. § 851

---

[1] References to Farrington's underlying criminal case, *United States v. Farrington*, 2:17-cr-20026-SLD-EIL, take the form: Cr.__.

1

notifying Farrington and the court that it would rely on Farrington's prior convictions for felony drug offenses to enhance his mandatory minimum sentence.  Information 1–2, Cr. ECF No. 10. That same day, Farrington pleaded guilty to the charge against him.  *See* Cr. Aug. 9, 2017 Min. Entry.

The United States Probation Office ("USPO") prepared a presentence investigation report ("PSR") in advance of sentencing.  *See* PSR, Cr. ECF No. 17.  USPO found that Farrington was a career offender, PSR ¶ 19, that his total offense level was 34, *id.* ¶ 22, and that his criminal history category was VI, *id.* ¶ 37.  Accordingly, the PSR listed his Sentencing Guidelines imprisonment range as 262 months to 327 months.  *Id.* ¶ 59.

Farrington's sentencing hearing was scheduled for December 8, 2017.  Cr. Aug. 9, 2017 Min. Entry.  In advance of sentencing, Pollock filed a sentencing memorandum arguing for the court to impose the mandatory minimum term of imprisonment of 120 months.  *See* Sentencing Commentary 4, Cr. ECF No. 19.  She argued that Farrington's criminal history category overrepresented "his true criminality," that Farrington's Guidelines range would have been 92 to 115 months without the career offender Guidelines, and that sentencing Farrington as a career offender would create unwarranted sentencing disparities in light of Farrington's non-violent history and the fact that he had "never spent more than a few months in custody."  *Id.* at 3–4.  On December 8, 2017, United States District Judge Colin Bruce, then presiding over the case, continued the sentencing hearing and directed the Government to file a response to Pollock's memorandum.  *See* Cr. Dec. 8, 2017 Min. Entry.  The Government asked Judge Bruce to sentence Farrington to 262 months of imprisonment, explaining that such a sentence would "address[] the seriousness of the offense and account[] for [Farrington's] criminal history" and

"protect the public from further crimes perpetrated by [a] serial drug trafficker."  Sentencing Resp. 4, Cr. ECF No. 22.

The sentencing hearing was held on January 9, 2018.  *See* Cr. Jan. 9, 2018 Min. Entry. Judge Bruce adopted the PSR, Sentencing Hr'g Tr. 4:11–15, Cr. ECF No. 31, heard argument from the parties, *id.* at 6:7–18:6, and heard Farrington's allocution, *id.* 18:17–20:5.  Judge Bruce "appl[ied] the factors as set forth in 18 USC Section 3553(a)," *id.* at 20:11–12, found that "a slight deviation" from the Guidelines was warranted, and sentenced Farrington to 240 months of imprisonment followed by an eight-year term of supervised release, *id.* at 25:7–23.

## B.  Appeal[2]

Farrington timely appealed on January 17, 2018.  *See* Not. Appeal, Cr. ECF No. 26. Pollock represented him on appeal.  Appearance 1, Doc. 2.  Farrington's brief was filed on June 28, 2018.  *See* Appellant Br., Doc. 15.  He argued that his sentence was substantively unreasonable and that the sentencing court committed a procedural error, causing a due process violation.  *See id.* at 2.  He argued that his sentence was substantively unreasonable because he was not a typical career offender and the court "put its thumb on the adversarial process" and "encouraged the government to try harder" by delaying the sentencing hearing to allow the Government to file a response to Farrington's detailed sentencing memorandum, which they had chosen not to do prior to the hearing.  *Id.* at 22–26.  He argued that the court's procedural error was that it relied on information about other defendants' sentences without identifying those defendants or discussing the specifics of their cases.  *See id.* at 2.

On August 5, 2019, the Seventh Circuit affirmed Farrington's sentence.  *See United States v. Farrington*, 783 F. App'x 610, 611 (7th Cir. 2019).  The court found that any

---

[2] Citations to documents from Farrington's appellate case, *United States v. Farrington*, No. 18-1122 (7th Cir. 2019), take the form: Doc. __.

procedural error the sentencing judge committed by relying on a comparison to other defendants was harmless because the comparison "merely corroborated his approach to sentencing Farrington." *Id.* at 613. And the court found that that Farrington's sentence was not substantively unreasonable. *Id.* at 613–14. First, it noted that "[w]hile a sentencing judge is free to disregard the career-offender enhancement, he is never compelled to overlook it." *Id.* at 614 (citation omitted). Next, it noted that "[a] below-Guidelines sentence like Farrington's is presumptively reasonable." *Id.* Finally, it disagreed that the court favored the Government by allowing it to respond; instead, the Seventh Circuit found that the court "simply wanted a full airing of the relevant arguments before he ruled on them." *Id.* On August 19, 2019, Farrington moved for rehearing, focusing on the procedural error issue. *See* Pet. Rehearing 1, Doc. 38. The motion was denied. Sept. 9, 2019 Order, Doc. 40.

## C. 2255 Proceedings

Farrington filed a *pro se* motion under 28 U.S.C. § 2255 in November 2019. 2255 Mot., ECF No. 1. Judge Bruce recused himself, Nov. 22, 2019 Text Order, and the case was later reassigned to this Court, Dec. 23, 2019 Text Order. Farrington then filed an amended motion, the Pro Se 2255 Motion.[3] In that motion, he argues that he received ineffective assistance of counsel because his counsel failed to raise as an issue on appeal that Judge Bruce should have recused himself under 28 U.S.C. § 455(a) based on *ex parte* communications he had with the United States Attorney's Office ("USAO") for the Central District of Illinois. *See* Pro Se 2255 Mot. 4. Farrington then filed a motion to supplement his Pro Se 2255 Motion by adding a claim that his due process rights were violated because Judge Bruce was biased in favor of the

---

[3] Initially, Farrington filed a motion for leave to file an amended motion, ECF No. 5, but the Court mooted the motion because it was filed within 21 days of service of the original § 2255 motion so leave was not necessary under Federal Rule of Civil Procedure 15(a)(1)(A). *See* Jan. 3, 2020 Order 1–2, ECF No. 8.

Government.  Mot. Supplement 1.  The Government filed a response, ECF No. 15, and Farrington filed a reply, ECF No. 16.

Shortly thereafter, the Court appointed counsel to represent Farrington.  *See* Mar. 27, 2020 Text Order.  The Counseled 2255 Motion followed.  *See* Counseled 2255 Mot. 1.  In this motion, Farrington reasserts his ineffective assistance of counsel claim and adds a due process claim asserting that Judge Bruce was actually biased against him and a claim that Judge Bruce should have recused himself under § 455.  *See id.* at 1–2, 12–23.  As the Counseled 2255 Motion reasserts the claim Farrington raised in the Pro Se 2255 Motion and the claim he sought to add in his motion to supplement, those *pro se* motions are MOOT.

The Government filed a response opposing the Counseled 2255 Motion.  Resp., ECF No. 23.  It argues that Judge Bruce was not actually biased against Farrington, that the § 455 claim is not cognizable in a § 2255 proceeding, and that Farrington's ineffective assistance claim is unmeritorious.  *See id.* at 32.  No reply was filed, but Farrington sent the Court multiple nearly identical documents indicating that he did not wish for his counsel to make the actual bias or § 455 claims.  *See, e.g.*, Apr. 29, 2021 Mot. Put Court on Not. 1–3.  The motions are DENIED to the extent they ask the Court to take judicial notice of any facts because these facts are not appropriate for judicial notice; in any case, they have no effect on the Court's ruling.

## DISCUSSION

### I.    Legal Standard

A prisoner in federal custody may move the court that imposed his sentence to vacate, set aside, or correct it.  28 U.S.C. § 2255(a).  "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process."  *Almonacid v. United States*, 476 F.3d 518, 521

(7th Cir. 2007).  Accordingly, such relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala v. United States*, 545 F.3d 517, 521 (7th Cir. 2008) (quoting 28 U.S.C. § 2255(a)).

## II.     Analysis

Farrington asserts three claims: first, a due process claim alleging that Judge Bruce was actually biased against him; second, a claim that Judge Bruce's failure to recuse himself based on an appearance of bias violated 28 U.S.C. § 455(a); and third, a claim that Farrington's appellate counsel, Pollock, was ineffective because she failed to raise a § 455(a) argument on appeal.  *See* Counseled 2255 Mot. 1–2.  The Court addresses the first two claims together and the third separately.

### A.  Due Process and § 455(a) Claims

Both the due process and § 455(a) claims are based on *ex parte* communications between Judge Bruce and the USAO that became public in August 2018, after Farrington was sentenced. These communications have been detailed and summarized elsewhere.  *See Shannon v. United States*, 39 F.4th 868, 876, 883 (7th Cir. 2022) (citing *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf).  Farrington argues that these communications demonstrate that Judge Bruce was actually biased against him, resulting in violation of his due process rights, and, alternatively, that they demonstrate an appearance of bias that required Judge Bruce to recuse himself under 28 U.S.C. § 455(a).  *See* Counseled 2255 Mot. 11–12.

1.  **Due Process**

"Due process requires 'a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case.'" *Shannon*, 39 F.4th at 883 (quoting *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997)). A due process claim can be proved by evidence of the judge's actual bias or by showing that "the probability of actual bias on the part of the judge or decisionmaker is too high to be constitutionally tolerable." *Id.* (quoting *Rippo v. Baker*, 580 U.S. 285 (2017)).

The Seventh Circuit has decided a few cases involving due process bias claims based on Judge Bruce's *ex parte* communications which are instructive here. In *United States v. Williams*, 949 F.3d 1056, 1061–63 (7th Cir. 2020), the court held that Judge Bruce presiding over a defendant's trial did not violate the defendant's due process rights where the defendant relied primarily on the *ex parte* communications but the communications did not concern the defendant's case. It noted that the Special Committee appointed by the Judicial Council of the Seventh Circuit to review complaints against Judge Bruce related to the *ex parte* emails "found no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Id.* at 1061–62 (quotation marks omitted). Moreover, the court noted that though the communications exposed a preexisting relationship with members of the USAO, such a relationship "alone does not create a due process violation." *Id.* at 1062. It found that the defendant had "presented no evidence to rebut th[e] presumption" that "judges rise above . . . potential biasing influences." *Id.* (quotation marks omitted). Like in *Williams*, the emails here do not concern Farrington or his case. *See* Counseled 2255 Mot. 14.[4]

---

[4] Farrington also makes no suggestion that Judge Bruce decided an issue against him. On appeal, he argued that the decision to delay sentencing to allow the Government to respond to his detailed sentencing commentary favored the

In *Shannon*, the Seventh Circuit found that Judge Bruce's participation in a defendant's sentencing hearing, as opposed to only his trial, may warrant a different result under the due process clause because judges have considerable discretion at sentencing. *Shannon*, 39 F.4th at 884–86.  In that case, Judge Bruce made comments at sentencing that the court concluded could have been interpreted as a warning that if the defendant appealed, he would impose a harsher sentence. *Id.* at 886–87.  Though it ultimately declined to rule on whether there was a due process violation, the Seventh Circuit appeared to be troubled by the combination of the *ex parte* communications and the comments. *See id.* at 884 (declining to resolve the constitutional issue and instead remanding for resentencing under the court's supervisory authority).  Here, there is no similar comment at sentencing that would lend itself to a finding that Judge Bruce was biased against Farrington.  Instead, Farrington is relying on the *ex parte* communications alone. *See* Counseled 2255 Mot. 12–15.  The Court thus finds that Farrington has failed to show either actual bias or a risk of bias so high that it violates due process.  The due process claim is denied.

### 2.  Section 455(a)

Under 28 U.S.C. § 455(a), a judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  The Government does not appear to dispute that Judge Bruce's impartiality might reasonably have been questioned and, thus, that he should have recused himself from Farrington's case under § 455(a).  It does argue, however, that this statutory claim is not cognizable under § 2255, Resp. 45–50, and, alternatively, that Farrington procedurally defaulted his § 455(a) appearance-of-bias claim by not raising it on direct appeal, *id.* at 50–51.  The Court declines to rule on the Government's first argument because it finds it unnecessary to do so.

---

Government, but the Seventh Circuit declined to find anything improper about that decision. *See Farrington*, 783 F. App'x at 614.

"A claim cannot be raised for the first time in a § 2255 motion if it could have been raised at trial or on direct appeal." *McCoy v. United States*, 815 F.3d 292, 295 (7th Cir. 2016). Here, Farrington acknowledges that he never raised his § 455(a) claim, *see* Counseled 2255 Mot. 23, so it is undisputedly procedurally defaulted. Procedural default can be excused "if the prisoner can demonstrate that he is 'actually innocent' of the crimes of which he was convicted" or on a showing of "cause and prejudice for the default." *McCoy*, 815 F.3d at 295. Ineffective assistance of counsel can establish cause for procedural default. *Castellanos v. United States*, 26 F.3d 717, 718 (7th Cir. 1994). Here, Farrington argues that his counsel was ineffective for failing to raise a violation of § 455(a) on direct appeal. Counseled 2255 Mot. 23. He appears to assert this as a standalone claim but also suggests it could serve as cause for procedural default. *Id.* at 22–23. However, if Farrington can establish that his counsel was ineffective for failing to raise the issue on appeal, then the Court can simply grant him his requested relief for that claim without needing to also consider whether it could grant the same relief for the § 455(a) claim. In other words, the § 455(a) claim is MOOT, so the Court proceeds to consider only Farrington's ineffective assistance of counsel claim.

### B. Ineffective Assistance of Counsel Claims

#### 1. Legal Background

The Sixth Amendment guarantees criminal defendants the right to the effective assistance of counsel. U.S. Const. amend. VI. Claims of ineffective assistance of counsel are subject to the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). This test requires a petitioner to show that his counsel's performance "fell below an objective standard of reasonableness" and that he suffered prejudice as a result. *Id.* at 688, 692. The court applies "a strong presumption that decisions by counsel fall within a wide range of reasonable trial

strategies." *United States v. Shukri*, 207 F.3d 412, 418 (7th Cir. 2000) (quotation marks omitted). The petitioner "must rebut this presumption by proving that his attorney's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). To demonstrate prejudice, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### 2. Analysis

Farrington argues that his appellate counsel was ineffective for failing to raise on appeal a claim that Judge Bruce violated § 455(a) by failing to recuse himself from the case. *See* Counseled 2255 Mot. 2–3, 22–23. A similar argument that Judge Bruce violated § 455(a) by failing to disqualify himself from a defendant's sentencing was raised before the Seventh Circuit while Farrington's appeal was pending. *See* Def.-Appellant's Opening Br., *United States v. Atwood*, No. 18-2113 (7th Cir. Jan. 17, 2019) (Doc. 18). Ultimately the Seventh Circuit found that Judge Bruce violated § 455(a) and the error was not harmless and vacated the defendant's sentence just a few months after Farrington's appeal was decided. *See United States v. Atwood*, 941 F.3d 883, 886 (7th Cir. 2019). Farrington argues that his counsel should have likewise raised the issue on his appeal since the emails came to light while his appeal was pending and that the argument would have been successful because his case is similar to the defendant's case in *Atwood*. *See* Counseled 2255 Mot. 15–23.

The Government argues that the ineffective assistance of counsel claim "does not warrant relief." Resp. 51 (capitalization altered). With respect to *Strickland*'s performance prong, the Government argues that Pollock's performance did not fall below an objective standard of

reasonableness, that she made a strategic decision to not raise the § 455(a) issue, and that the

Court must defer to her decision and avoid the distorting effect of hindsight by not considering

the outcome in *Atwood*. *Id.* at 55–61.  And with respect to the prejudice prong, the Government

argues that Farrington must (and cannot) show both that the Seventh Circuit would have granted

him a resentencing and that he would have been sentenced to less time.  *Id.* at 61–63; *id.* at 54

(arguing that Farrington must "establish a probability that the Seventh Circuit would have

vacated his sentence and another sentencing judge would have reduced his sentence further

below the 240-month below-guideline sentence he received").

  Initially, the Court finds it prudent to clarify the correct principles for a claim that counsel

was ineffective for failing to raise an issue on appeal.  Although "[t]he right to appellate counsel

is . . . firmly established," *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986), "[e]ffective

advocacy does not require the appellate attorney to raise every non-frivolous issue under the

sun," *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996).  But if appellate counsel fails "to raise a

significant and obvious issue, the failure c[an] be viewed as deficient performance."  *Gray*, 800

F.2d at 646.  "Generally, only when ignored issues are clearly stronger than those presented, will

the presumption of effective assistance of counsel be overcome."  *Id.*  Contrary to the

Government's assertion that Farrington must show that he would have received a lower

sentence,[5] prejudice is shown if "there is a reasonable probability that [the] case would have

been remanded" for further proceedings or the lower court decision would have been modified in

some way.  *See Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000); *see also Vang v. United

States*, 17-cv-902-wmc, 16-cr-059-wmc, 2021 WL 6134572, at *6 (W.D. Wis. Dec. 29, 2011)

---

[5] The Government cites no case that supports this assertion.  Instead, it cites to a case involving alleged ineffective
assistance of counsel at trial, *see* Resp. 54 (citing *United States v. Kamel*, 965 F.2d 484, 499 (7th Cir. 1992)), which
is a different procedural context.

("[C]ourts evaluate appellate counsel's performance based on the appealable issues available and permit counsel to make strategic choices, including asking whether there is a reasonable probability that raising the issue(s) would have affected the outcome of the appeal.").

### a. Prejudice

The Court will address prejudice first because "there is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. The deficient performance question will require a detailed review of facts which the Court will only engage in if necessary.

In this case, the prejudice inquiry is whether the Seventh Circuit Court of Appeals would have vacated Farrington's conviction or sentence and remanded for new proceedings had Pollock raised a claim that Judge Bruce violated § 455(a) by failing to recuse himself. The Seventh Circuit has issued a few opinions involving Judge Bruce's *ex parte* communications with the USAO which guide the Court's analysis here. *See Atwood*, 941 F.3d at 885–86; *Williams*, 949 F.3d at 1063–66; *United States v. Orr*, 969 F.3d 732, 738–42 (7th Cir. 2020).

Even though the claim would have been raised for the first time on appeal, the Seventh Circuit would have considered the claim *de novo* because the communications were disclosed after Farrington was sentenced. *See Atwood*, 941 F.3d at 885. And because the Government conceded that Judge Bruce's impartiality might reasonably have been questioned in light of his communications with the USAO in *Atwood*,[6] *see id.*, which was proceeding at the same time as Farrington's case on appeal, it is reasonably probable they would have done so in Farrington's case as well. Indeed, the Government does not specifically argue in response to Farrington's

---

[6] As far as the Court can tell, the Government has conceded an appearance of impropriety—and thus a violation of § 455(a)—in every case involving Judge Bruce's communications that has been decided thus far. *See, e.g.*, *Williams*, 949 F.3d at 1063; *Orr*, 969 F.3d at 738.

§ 2255 motion that Judge Bruce did not violate § 455(a).  As such, it is reasonably probable that

Farrington could have established that Judge Bruce violated § 455(a).  The Seventh Circuit

would have then considered whether the § 455(a) violation was harmless error by looking to

three factors: "(1) the risk of injustice to the parties in this case, (2) the risk of injustice to parties

in future cases, and (3) the risk of undermining public confidence in the judicial process."  *Id.*

(citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 (1988)).

### 1. Request for a Trial on Remand

To the extent that Farrington would have argued that Judge Bruce presiding over the pre-

plea proceedings was not harmless and his conviction should be vacated so he can receive a trial,

*see* Counseled 2255 Mot. 17, the Seventh Circuit would have disagreed.  The Seventh Circuit has

yet to decide a case where a defendant who pleaded guilty sought a new trial based on Judge

Bruce's violation of § 455(a).  It is not clear that a defendant who pleads guilty could ever be

entitled to a trial on remand due to a judge's violation of § 455(a).  Applying principles from *Orr*

and *Williams*, however, it is clear that such a remedy is unwarranted at least in this case.

Farrington voluntarily pleaded guilty and admitted to committing the offense.  *See* Change of

Plea Hr'g Tr. 20:4–21:13, Cr. ECF No. 29.  Judge Bruce did not consider the evidence and find

Farrington guilty.  *Cf. Williams*, 949 F.3d at 1064, 1065–66 (relying heavily on the fact that

"[a]lthough Judge Bruce presided over Williams's trial, he was not the trier of fact making the

ultimate determination of whether the government had proved Williams guilty beyond a

reasonable doubt" in finding that Judge Bruce's § 455(a) violation was harmless error).  Perhaps

someone who pleaded guilty could have his plea vacated and obtain a trial if he showed that a

judge who violated § 455(a) made significant, discretionary rulings which impacted his decision

to plead guilty.  *Cf. Orr*, 969 F.3d at 739–41 (considering whether Judge Bruce's pre-trial and

trial decisions were substantial, discretionary calls such that "it [wa]s possible the district court's personal biases influenced the outcome in th[e] case").  But Farrington points to no such rulings. The Seventh Circuit would therefore find that Judge Bruce presiding over the pre-plea proceedings was harmless and that Farrington would not be entitled to remand for a trial.

### 2.  Request for Resentencing

Whether the Seventh Circuit would find that Judge Bruce's presiding over Farrington's sentencing hearing was harmless error, however, is a different question.  In *Atwood*, the Seventh Circuit addressed a § 455(a) claim based on Judge Bruce's presiding over the defendant's sentencing hearing, so it is particularly instructive here.  With respect to the first factor, the Seventh Circuit found that upholding the defendant's sentence would create "a real risk of unfairness to him" because "Judge Bruce calculated [the defendant's] sentence based on the factors outlined in 18 U.S.C. § 3553(a)."  *Atwood*, 941 F.3d at 885.  The court reasoned that "[t]he open-endedness of the § 3553(a) factors leaves ample room for the court's discretion" and "[t]hat discretion invites the risk that a judge's personal biases will influence or appear to influence the sentence he imposes."  *Id.* (first alteration in original) (quotation marks omitted). "Conversely," the Seventh Circuit found, "there [wa]s little risk of unfairness to the government" if it remanded for resentencing because resentencing does not impose much hardship.  *Id.* Because the risk of unfairness to the defendant was substantial but the risk of unfairness to the government was minimal, the Seventh Circuit found that the first factor weighed in favor of resentencing.  *Id.*

The Seventh Circuit likely would have found the first factor weighed in favor of resentencing here, too.  Judges have substantial discretion over sentencing, so upholding Farrington's sentence would create a real risk of unfairness to him.  But there would be little risk

of unfairness to the Government because holding a resentencing hearing is not very costly.  The Government attempts to distinguish this case from *Atwood* because in *Atwood*, the Guidelines range and the defendant's career offender status were contested, and the defendant received a sentence in the middle of the Guidelines range.  Resp. 62.  Here, the Government points out, the parties did not contest whether Farrington was a career offender or what the correct Guidelines range was, and Judge Bruce sentenced Farrington below the Guidelines.  *Id.*  But it is not clear that these specific circumstances influenced the Seventh Circuit's decision in *Atwood*.  The only specifics of the case the court mentioned in the paragraph analyzing unfairness to Atwood is that "Judge Bruce calculated [the defendant's] sentenced based on the factors outlined in 18 U.S.C. § 3553(a)."  *Atwood*, 941 F.3d at 885.  The same is true in this case.  *See* Sentencing Hr'g Tr. 20:7–12 ("I'm taking the sentencing guidelines into account, but I'm only doing so on an advisory basis. . . . I'm going to apply the factors as set forth in 18 USC Section 3553(a).").  True, Judge Bruce exercised his discretion to sentence Farrington to below the Sentencing Guidelines range for imprisonment, but he also exercised his discretion not to sentence Farrington to a lesser sentence, as Pollock was advocating for.

How the Seventh Circuit would have addressed the second factor—the risk of injustice to parties in future cases—is less clear.  In *Atwood*, the court addressed this factor only briefly, finding that it weighed in favor of granting the defendant relief because "enforcing § 455(a) in this case may prevent a substantive injustice in some future case . . . by encouraging judges to exercise caution in their communications."  *Atwood*, 941 F.3d at 885 (quotation marks omitted).  In *Williams*, however, the Seventh Circuit found that this factor weighed against granting the defendant his requested relief because the Seventh Circuit Judicial Council publicly reprimanded Judge Bruce and ordered that he remain unassigned to matters with the USAO for a period of

time and because Judge Bruce changed his practices to avoid future problems. *Williams*, 949 F.3d at 1065. The *Williams* decision does not mention the contrary finding in *Atwood*. *Id.* In *Orr*, the Seventh Circuit found the second factor weighed against granting the defendant relief because "no reason [wa]s provided as to why the *Williams* decision was erroneous on th[at] point," though it did acknowledge the contrary finding in *Atwood*. *Orr*, 969 F.3d at 741. In light of these unexplained conflicting holdings, the Court cannot guess how the Seventh Circuit would have weighed this factor for Farrington.

However, even if the Seventh Circuit would have found that factor two weighed against resentencing, it would have found the third factor—the risk of harm to the public's confidence in the impartiality of the judiciary—weighed in favor of resentencing. In *Atwood*, the Seventh Circuit found that this factor weighed in favor of remanding for resentencing. *Atwood*, 941 F.3d at 885–86. It noted that "[i]n sentencing, the most significant restriction on a judge's ample discretion is the judge's own sense of equity and good judgment" and reasoned that "[w]hen those qualities appear to be compromised, the public has little reason to trust the integrity of the resulting sentence." *Id.* at 886. Because the Government had "conceded that Judge Bruce compromised his appearance of impartiality," the Seventh Circuit concluded that "[a]llowing [the defendant's] sentence to stand would undermine the public's confidence in the fairness of this sentence and in the impartiality of the judiciary." *Id.*; *cf. Orr*, 969 F.3d at 741–42 (finding that upholding the defendant's conviction "may damage the public's confidence in the impartiality of the judiciary" in light of the "substantial discretion" exercised by Judge Bruce in making evidentiary rulings at trial). The same considerations apply to Farrington's case. Farrington was sentenced by Judge Bruce, who exercised ample discretion. If Pollock had raised the recusal issue on appeal, the Government very likely would have conceded an appearance of

16

impropriety; in light of that concession, leaving Farrington's sentence intact would similarly undermine public confidence in the fairness and impartiality of the judiciary.

Because at least two of the factors would weigh in favor of vacating Farrington's sentence and remanding for resentencing, the Seventh Circuit would likely not find the § 455(a) error harmless. *Cf. Orr*, 969 F.3d at 742 (concluding that "the error in Judge Bruce not disqualifying himself from the case was" not harmless where the first and third factors supported vacating the defendant's conviction). In other words, had this issue been raised, there is a reasonable probability that it would have led to Farrington's sentence being vacated and his case remanded for resentencing before a different judge.

### b. Deficient Performance

The question remains, however, whether it was deficient performance for Pollock not to raise the issue on appeal. Both sides submitted evidence outside the record that bears on whether Pollock's failure to raise the recusal issue on appeal was objectively unreasonable.[7] Farrington submitted an affidavit from Pollock in which she declares that her "failure to raise an issue under the recusal statute, 18 U.S.C. Section 455(a)[8] was not based on any litigation strategy." Pollock Aff. ¶ 6, Counseled 2255 Mot. Ex. A, ECF No. 22-1 at 2. Instead, she states, she "simply failed to recognize the recusal statute provided the basis for a valid claim that [his] sentence should be vacated" and "[t]his was an oversight on [her] part rather than a strategic decision." *Id.* Farrington also submitted a letter sent to him by Federal Public Defender Thomas Patton dated

---

[7] Typically, an ineffective assistance of counsel claim based on the failure to raise an issue on appeal does not necessitate an evidentiary hearing. *See Gray*, 800 F.2d at 647 ("When a claim of ineffective assistance of counsel is based on failure to raise issues on appeal, we note it is the exceptional case that could not be resolved on an examination of the record alone."). The court may simply "examin[e] the trial record and the appellate brief" and decide whether the issue the defendant wanted his counsel to raise was "a significant and obvious issue" that was "clearly stronger than those presented." *Id.* at 646. In this case, however, the facts underlying the claim to be raised on appeal were not available while the case proceeded at the district court level, so the Court must look to facts beyond the record.

[8] Presumably she meant 28 U.S.C. § 455(a). There is no 18 U.S.C. § 455(a).

November 26, 2018 advising him that he may have a meritorious claim that Judge Bruce violated

his due process rights because the *ex parte* communications revealed a bias against criminal

defendants.  Nov. 26, 2018 Patton Letter, Counseled 2255 Mot. Ex. B, ECF No. 22-2.  Patton

advised Farrington that he could file a motion under 28 U.S.C. § 2255.  *Id.*

     The Government—which conducted discovery under Rule 6 of the Rules Governing

§ 2255 Proceedings—submitted emails and other communications from the Federal Public

Defender's Office ("FPDO") that relate either to the recusal issue or Farrington's case.  *See*

FPDO Communications About Recusal Issue Not Related to this Case, Resp. Ex. A, ECF No.

23-1; FPDO Communications About This Case, Resp. Ex. B, ECF No. 23-2.[9]  The Government

argues that these communications show that Pollock chose not to raise a recusal statute claim

because the FPDO concluded such a claim was unlikely to prevail on appeal.  *See* Resp. 57–58.

It argues that Pollock "made informed strategic choices about [Farrington's] case" and that

"[t]hose choices are reasonable when viewed in the appropriate framework, and using the

*Atwood* decision to second-guess these choices is improper."  *See id.* at 61.[10]

     The Court concludes that an evidentiary hearing is warranted because "the motion, files,

and records of the case" do not "conclusively show that [Farrington] is entitled to no relief."

*Torzala*, 545 F.3d at 525 (quotation marks omitted); *Bradley v. United States*, 219 F. App'x 587,

589 (7th Cir. 2007) (finding that the district court abused its discretion by denying the petitioner

an evidentiary hearing where the petitioner "supported his claim . . . with several affidavits").

The recusal claim was a significant, obvious issue.  *Gray*, 800 F.2d at 646.  The Seventh Circuit

---

[9] Further citations to documents contained within these exhibits will take the form: Document Title, ECF No. __ at page number.
[10] The Government makes a number of other irrelevant arguments.  For instance, it spends almost a page arguing that attorneys are not ineffective for failing to predict changes in the law.  *See* Resp. 56–57.  But *Atwood* did not bring about a change in the law, so it is not clear why that line of cases is relevant.  It also argues that the FPDO made a reasonable decision to preserve actual bias claims through a tolling agreement.  *See id.* at 57.  Even if true, that says nothing about the decision not to raise a statutory recusal claim on appeal in this case.

Judicial Council acknowledged in May 2019, when it adopted the Special Committee's report on the judicial conduct complaints against Judge Bruce, that "unnecessary ex parte communications . . . . creat[e] an appearance of impropriety and unfairness."  Special Committee Report 8, *In re Complaints Against District Judge Colin S. Bruce*, Nos. 07-18-90053 & 07-18-90067 (7th Cir. Jud. Council adopted May 14, 2019), http://www.ca7.uscourts.gov/judicial-conduct/judicial-conduct_2018/07_18-90053_and_07-18-90067.pdf); *see id.* ("[P]ublicity [of the communications] would likely further a perception that Judge Bruce has an inappropriate closeness with the [USAO] and made too common a practice of ex parte communications, both of which could undermine the public confidence in Judge Bruce.").  Indeed, the Government, the FPDO, and the Central District of Illinois treated the issue quite seriously when they became aware of it.  The Government sought permission to contact defendants to alert them of the *ex parte* communications.  *See, e.g.*, Gov't's Mot. Order Authorizing Limited Contact with Defs., ECF No. 23-1 at 11–16.  Patton wrote to then-Chief Judge James Shadid indicating that the FPDO desired to represent defendants who might bring postconviction challenges arguing that Judge Bruce was biased against them and violated their due process rights.  *See* Oct. 26, 2018 Patton Letter to Judge Shadid, ECF No. 23-1 at 3–5.  And he sent letters to defendants, including Farrington, alerting them they could file § 2255 motions alleging that Judge Bruce was biased against them.  *See, e.g.*, Nov. 26, 2018 Patton Letter.  Further, Judge Shadid removed Judge Bruce from all cases involving the USAO after learning about the communications.  *See Atwood*, 941 F.3d at 884.  It should have been obvious that these *ex parte* communications potentially posed a risk to criminal defendants like Farrington such that Pollock should have explored whether she could raise a claim based on the communications on Farrington's behalf.[11]

---

[11] Indeed, the Court wonders why Pollock did not attempt to raise *any* claims based on Judge Bruce's communications in Farrington's appeal, not even a due process claim, which her office was clearly contemplating

As explained before, Farrington was sentenced in January 2018.  *See supra* Background § A.  His appeal was docketed shortly thereafter.  *Id.* § B.  His appellate brief was filed on June 28, 2018.  *See id.*  Judge Bruce's *ex parte* communications became public in August 2018.  *See supra* Discussion § II(A).  Farrington's appeal was not decided until August 5, 2019.  *See supra* Background § B.  Certainly, Pollock could have sought to file an amended brief raising the recusal issue any time before the case was decided in August 2019.  Pollock states that her failure to do so was not strategic and instead was an oversight.  *See* Pollock Aff. ¶ 6.  The evidence provided by the Government does not contradict this statement.[12]

The evidence provided by the Government shows that Pollock became aware of the potential for raising a statutory recusal claim based on the *ex parte* communications on January 24, 2019 at the latest.  On that day, she received an email from Gregg Walters from the USAO alerting her to the opening brief in *Atwood*, which included a statutory recusal claim based on the *ex parte* communications, and indicating that the Government would not oppose a motion to file an amended brief raising a similar issue in another of Pollock's cases.  Jan. 24, 2019 Walters Email, ECF No. 23-1 at 8–9.  Pollock sent the message to Patton asking what he thought because she "had not planned on raising this on direct appeal."  Jan. 24, 2019 Pollock Email, ECF No. 23-1 at 8.  Patton's response was not provided to the Court.  No evidence provided by the

---

bringing on behalf of defendants tried and sentenced by Judge Bruce.  *See* Oct. 26, 2018 Patton Letter to Judge Shadid; Nov. 26, 2018 Patton Letter.  Although these due process claims have not been successful, *see supra* Discussion § II(A)(1), it is not apparent to the Court why the FPDO would have considered waiting to raise those issues in postconviction motions for defendants with pending appeals and risk procedurally defaulting the claims.

[12] The Court finds that Pollock's affidavit provides sufficient evidence to rebut the presumption that not raising the recusal issue was a reasonable, strategic decision.  But it also notes that the recusal issue was "clearly stronger" than the issues Pollock did raise in Farrington's appeal, which could also serve to rebut the presumption of effective assistance.  *See Gray*, 800 F.2d at 646 (noting that the presumption of effective of assistance of counsel is overcome "when ignored issues are clearly stronger than those presented").  The argument that Farrington's sentence was substantively unreasonable faced an uphill battle since he was sentenced to a below-Guidelines sentence.  *See Farrington*, 783 F. App'x at 614.  And the procedural error issue was weak where Judge Bruce's reference to other defendants was brief and merely corroborated his approach to sentencing Farrington.  *See id.* at 613.

Government explains why Pollock had not planned on raising the issue on direct appeal or how Walters's email impacted her point of view.

On October 25, 2019, the day after *Atwood* was decided, Pollock emailed Patton again. Oct. 25, 2019 10:24 AM Pollock Email, ECF No. 23-1 at 84.  She wrote, "The government concedes the appearance of impartiality in this case and in no others?  WTF?  I just lost [a different case] and they found no appearance of impropriety.  Is there anything I can do about this?"  *Id.*  Patton responded, "The short answer is we didn't argue recusal based on the emails [in that case]."  Oct. 25, 2019 12:19 PM Patton Email, ECF No. 23-1 at 85.  Pollock responded, "Ugh.  I should have raised it de novo."  Oct. 25, 2019 12:20 PM Pollock Email, ECF No. 23-1 at 86.  Patton responded, "I didn't catch it either."  Oct. 25, 2019 12:24 PM Patton Email, ECF No. 23-1 at 87.  After Pollock identified a few defendants on whose behalf she could have raised the statutory recusal issue, including Farrington, Patton advised Pollock to inform those defendants they had a right to file a motion under 28 U.S.C. § 2255 alleging that Pollock was ineffective for failing to raise the statutory recusal issue on appeal and to attach an affidavit stating that her failure was not a strategic decision, but rather an oversight.  Nov. 5, 2019 Patton Email, ECF No. 23-1 at 89.  These emails, along with the affidavit Pollock provided to Farrington, support finding that she did not make an affirmative, strategic choice not to raise the recusal issue.

The Government is resting its argument that Pollock, and the FPDO generally, "considered the [statutory recusal] arguments and chose not to make them in any of their pending appeals or post-conviction motions" because it "was unlikely to prevail in the Seventh Circuit," on an email from Assistant Federal Public Defender Peter Henderson to Patton about a motion for a new trial they filed in a different case.  Resp. 57–58.  It is not clear whether Pollock was

even aware of these discussions, but even if she were, the email does not support the Government's argument. Patton had sent Henderson a draft of an amended motion for a new trial, and Henderson sent edits back. *See* Dec. 4, 2019 Henderson Email, ECF No. 23-1 at 95. Henderson also stated: "I remembered why we didn't include 455(a) before. O'Malley seems to imply you need to show a possibility of acquittal for anything but the most serious constitutional claims, and a statutory claim under 455(a) might not qualify. Makes sense to include it now, though, after Atwood." *Id.*

O'Malley refers to *United States v. O'Malley*, 833 F.3d 810 (7th Cir. 2016). In that case, the Seventh Circuit considered what kinds of claims can be brought and what showing needs to be made on a motion for a new trial under Federal Criminal Rule of Procedure 33. *See id.* at 813–15. It held that "a motion for a new trial based on newly discovered evidence that demonstrates constitutional or statutory error may . . . be brought under Rule 33" but can be granted only "if the interest of justice so requires." *Id.* at 815 (quotation marks omitted). The court also reiterated that "the interest of justice requires a new trial if additional evidence . . . probably would have led to acquittal." *Id.* at 813 (quotation marks omitted). Putting these principles together, the case implies that a claim of constitutional or statutory error must create a possibility of acquittal to be successful in a motion for a new trial based on new evidence under Rule 33. *O'Malley* says nothing about raising claims of statutory error, particularly statutory recusal claims, on appeal. It is more likely that Henderson was only explaining why they had chosen not to raise a statutory recusal claim when filing a motion for a new trial based on new evidence in that particular case, not stating the FPDO's general position on raising statutory recusal claims on appeal.[13]

---

[13] Indeed, if this email did show that the FPDO's decision not to raise statutory recusal claims on appeal was based on a concern over *O'Malley*, it could demonstrate that the decision was objectively unreasonable because it was

The Court does note, however, that there are a few communications in the record which could be read to suggest that the FPDO, including Pollock, did not expect the claim in *Atwood* to prevail.  For example, on March 15, 2019, Johanna Christiansen, another Assistant Federal Public Defender, emailed Patton and Henderson about the *Atwood* case, alerting them that the defendant's attorneys filed a new brief.  Mar. 15, 2019 Christiansen Email, ECF No. 23-1 at 75. Henderson responded, "Makes me optimistic for our case, though I think it's false optimism." Mar. 15, 2019 Henderson Email, ECF No. 23-1 at 77.  And on October 27, 2019, Pollock sent Farrington a message in prison stating that the *Atwood* ruling was "a helluva surprise" and that "[t]he government apparently ha[d] reversed their position and [was] now conceding that Bruce had the appearance of impropriety."  Oct. 27, 2019 Pollock Trulincs Message, Mot. 28 U.S.C. 2255 Exs., ECF No. 1-1 at 5.  Nevertheless, neither of these statements conclusively show that Pollock's failure to raise Judge Bruce's failure to recuse on appeal was an informed, strategic decision.

Because Farrington has alleged facts, supported by affidavits, which, if proved, would entitle him to relief, he is entitled to an evidentiary hearing.  *See Galbraith v. United States*, 313 F.3d 1001, 1009 (7th Cir. 2002) ("While . . . a district court [is required] to grant an evidentiary hearing if a § 2255 petitioner alleges facts that, if proven[,] would entitle him to relief, the threshold determination that the petitioner has sufficiently alleged such facts requires the petitioner to submit a sworn affidavit showing what specific facts support the petitioner's assertions.").

---

based on a misunderstanding of the law.  *Cf. Johnson v. United States*, 604 F.3d 1016, 1019 (7th Cir. 2010) ("We have repeatedly recognized, however, that a decision of trial counsel based on a misapprehension of law may constitute objectively unreasonable performance.").  The Seventh Circuit explicitly held in *Fowler v. Butts*, 829 F.3d 788, 791–95 (7th Cir. 2016), that § 455(a) claims can be raised for the first time on direct appeal.

**CONCLUSION**

Accordingly, Petitioner Cartavius Farrington's Pro Se 2255 Motion, ECF No. 9, and *pro se* motion to supplement, ECF No. 11, are MOOT.  The *pro se* motions to put the Court on notice of adjudicative facts, ECF Nos. 24, 25, and 27, are DENIED.  The motion for a status conference, ECF No. 28, is MOOT.  The Counseled 2255 Motion, ECF No. 22, is DENIED IN PART:  Farrington's due process claim is DENIED, and his claim under 28 U.S.C. § 455(a) is MOOT.  The Court refers the matter to United States Magistrate Judge Jonathan Hawley to conduct an evidentiary hearing on Farrington's claim that his counsel was ineffective for failing to raise on appeal a claim that Judge Bruce should have recused himself under 28 U.S.C. § 455(a).

Entered this 30th day of March, 2023.

s/ Sara Darrow
SARA DARROW
CHIEF UNITED STATES DISTRICT JUDGE